# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02485-PAB-SBP

CANDICE A. SOBANSKI, M.D.,

      Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,

      Defendant.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Plaintiff Dr. Candice A. Sobanski's Motion for Protective Order for Relief from Certain Discovery Requests (ECF No. 53) ("Motion" or "Motion for Protective Order"). Defendant Provident Life and Accident Insurance Company responded (ECF No. 64), and Dr. Sobanski replied (ECF No. 72). The court considers the Motion pursuant to 28 U.S.C. § 636(b)(1), the Order Referring Case dated January 16, 2025 (ECF No. 20), and the Memorandum dated December 17, 2025 (ECF No. 55).

Following a careful evaluation of the Motion and related briefing, the entire docket, and the applicable law, the court respectfully **DENIES** the Motion and **ORDERS** Dr. Sobanski to respond to the interrogatories at issue, as cabined by Provident and further restricted by the court below.

## BACKGROUND

### A.    Facts

The underlying dispute in this case arises from Provident's decision to deny a claim made by Dr. Sobanski under a long-term disability insurance policy. The following facts are derived from the operative pleading (ECF No. 4) and other materials in the court record, unless otherwise indicated.

Dr. Sobanski worked as an independent contractor for an entity called Team Health, assigned as an emergency room physician at Sterling Regional Medical Center in Sterling, Colorado ("Sterling"), from 2017 until January 2022. *See* ECF No. 4 ¶¶ 1, 20-23; *see also* Sobanski Depo., ECF No. 64-1 at 41, 13:3-11. Dr. Sobanski suffers from several mental health conditions, including anxiety, post-traumatic stress disorder ("PTSD"), and depression. ECF No. 4 ¶¶ 6-7. These conditions interfered with Dr. Sobanski's ability to perform the duties of her job, which in turn caused her symptoms to worsen. *Id.* ¶¶ 11-12. In addition to medication and therapy, Dr. Sobanski had previously attempted to manage these conditions by transferring between several practice groups and by taking a leave of absence. *Id*. ¶¶ 16-20. Despite those attempts to gain control of the conditions, Dr. Sobanski says that her symptoms continued to deteriorate. *Id.* ¶ 22. Around January 2022, Dr. Sobanski's psychiatrist, Dr. John Fleming, advised her that her "psychological condition precluded her from continuing to work as a physician." *Id.* ¶ 25. Specifically, Dr. Fleming believed that Dr. Sobanski's work with severely ill and dying patients was exacerbating her depression to a degree that she was unable to continue working as an emergency medicine physician. *Id.* ¶ 26. Dr. Sobanski resigned on January 21, 2022. *Id.* ¶ 23.

2

At the time of her resignation, Dr. Sobanski held a disability insurance policy with Provident (the "Policy"). *Id.* ¶ 27. Per the Policy, Dr. Sobanski was entitled to benefits in the event she became unable to "perform the substantial and material duties of [her] occupation." *Id.* ¶ 28; *see also* ECF No. 1-5 at 14 (Policy). Under the Policy, Dr. Sobanski's occupation was specific to her specialty in emergency medicine, the practice area in which she is board-certified. *See* ECF No. 4 ¶¶ 9, 28. In July 2022, Dr. Sobanski filed a disability claim with Provident. *Id.* ¶ 32. She also signed a medical release allowing Provident to access her medical records and gave Provident an attending physician statement ("APS") from Dr. Fleming. *Id.* ¶¶ 33-34; *see also* ECF No. 48-1 at 1-3 (APS).

The APS focused primarily on Dr. Fleming's concerns for Dr. Sobanski's health. *See* ECF No. 48-1 at 1-2. Dr. Fleming wrote that Dr. Sobanski suffered from major depressive disorder and that stress from her job had "result[ed] in an intensification of symptoms." *Id.* at 1.[1] "When dealing with severely ill and dying patients," Dr. Fleming wrote, "Dr. Sobanski becomes distraught, anxious, unable to focus, sad and overwhelmed, [and] unable to sleep or relax." *Id.* at 2. Dr. Fleming also noted that erratic scheduling and high patient volumes further aggravated Dr. Sobanski's symptoms. *Id.* Per Dr. Fleming, "[m]ultiple efforts to change ER settings [and] less frequent shifts have failed to help," and "medications are not sufficient." *Id.* at 2. The APS was silent concerning Dr. Sobanski's work performance. *See id.* at 1-2.

Provident subsequently notified Dr. Sobanski that it was seeking medical records directly

---

[1] In order to explain its conclusion here, the court necessarily discusses information contained in restricted filings, including ECF No. 48. *See* ECF No. 49 (stating, in an order granting a motion for leave to restrict, that the restriction "does not apply to how such information will be handled in hearings, *orders*, or at trial" (emphasis added)).

from Dr. Fleming. ECF No. 4 ¶ 38. From July to November 2022, Provident sent Dr. Sobanski

multiple notices advising her that it had not yet received records from Dr. Fleming. *Id.* ¶¶ 38-61;

*see also* ECF No. 64-2 at 7-24 (reflecting at least eight requests for Dr. Fleming's treatment

records during this period). On November 22, 2022, Provident advised Dr. Sobanski that it still

had not received the requested records from Dr. Fleming and, as a result, was closing her claim;

however, a Provident official informed Dr. Sobanski that Provident "would be happy to review

the records if she could provide them to the insurance company." ECF No. 4 ¶ 62. On December

9, 2022, Dr. Fleming sent Provident another APS, accompanied by a letter stating that Dr.

Sobanski's "ongoing depression and PTSD remain highly symptomatic," that she was "not able

to work as an emergency room physician due to severity of distress and symptoms," and that she

was on a continuing regimen of ketamine infusions and other medications to manage her mental

health diagnoses. ECF No. 48-1 at 18-23; *see also* ECF No. 56-1 at 35-37. Dr. Fleming made no

mention in these materials of any possible compromise to patient safety attendant on those

conditions. *See generally* ECF No. 48-1 at 18-23. On December 12, 2022, Dr. Sobanski appealed

Provident's decision to close her claim. ECF No. 64-1 at 26.

Provident asserts that it "repeatedly contacted both Dr. Fleming and Dr. Sobanski

requesting treatment records to no avail," ECF No. 64 at 4, and that point is borne out by the

documents Provident has placed in the court record in response to the Motion. Provident upheld

the decision on Dr. Sobanski's claim on January 30, 2023, informing her that "the information

currently available does not allow for the assessment of your functionality without records from

Dr. Fleming from January 01, 2021 to the present." ECF No. 64-1 at 28. The appeal decision

chronicled Provident's numerous attempts to obtain medical records that might have supported

Dr. Sobanski's claim to entitlement to benefits under the Policy. *See id.* at 29 ("The Benefits Center began their requests for records from Dr. Fleming in July 2022 when you presented your claim. Despite multiple attempts from Unum's[2] medical vendor, and from the Benefits Center via telephone, fax and US mail, they have not received the requested records."); *id.* ("The Benefits advised you in letters dated July 20, 2022, August 19, 2022, August 25, 2022, September 22, 2022 and October 21, 2022 that records were needed from Dr. Fleming."); *id.* (stating that Provident "attempted to reach Dr. Fleming's office to determine if we could obtain the actual notes to go with the dates of treatment provided" three times "and left messages asking for a return call," but that "[a]s of this date, no response has been received"); *id.* at 30 (noting a telephone call with Dr. Sobanski on January 13, 2023, in which she advised that she "would call Dr. Fleming directly to get him to submit the records. We advised you that the records needed to be submitted by the following Friday January 20, 2023 or we would have to proceed with our review. As of this date, the records have not been received from Dr. Fleming's office.").

In the appeal decision, Provident advised Dr. Sobanski that her failure to provide the necessary medical records prompted the denial of her claim:

> Based on our review, the decision to deny benefits on your claim is appropriate. The medical documentation currently available is not sufficient for Unum to determine support for impairment from January 22, 2022 and beyond and your claim will remain closed.

*Id.* Notwithstanding this history of nonresponsiveness, Provident gave Dr. Sobanski until

---

[2] Provident is a subsidiary of Unum Group. *See Form 10-K, Unum Group*, SEC (Feb. 19, 2019), https://archive.is/wip/7KVmn. The use of the term "Provident" here encompasses any actions technically undertaken by Unum concerning Dr. Sobanski's claim.

February 28, 2023, to submit any "additional information in support of [her] claim that is relevant to [her] condition[.]" *Id.* at 31. But Provident cautioned her that "[i]f we have not received the additional information by this date, our decision [with regard to her claim] will remain unchanged." *Id.* Nothing in the record before the court indicates that Dr. Sobanski submitted additional information to Provident by the extended deadline.

Provident avers that it heard nothing from Dr. Sobanski for well over a year. Then, in April 2024, an attorney for Dr. Sobanski sent a letter asking to reopen her claim. *See* ECF No. 64 at 4. With that letter to Provident, counsel included a letter from Dr. Fleming dated three months before that. ECF No. 56-1 at 39-41 (January 22, 2024 letter from John L. Fleming to Gideon Irving). In that letter, Dr. Fleming stated that he was "provid[ing] additional treatment details beyond my previously submitted letters summarizing [Dr. Sobanski's] treatment with me and my medical opinion that she is disabled from her chosen profession." *Id.* at 39. The letter recounted Dr. Sobanski's medical history in general and her treatment history with Dr. Fleming specifically, which he states commenced on March 14, 2013, consequent to a referral to him "for treatment by the Colorado Physician Health Program[3] ("CPHP") . . ." *Id.* According to publicly available information contained on the website of the Colorado Department of Regulatory Agencies, Dr. Sobanski entered into a Stipulation and Final Agency Order with the Colorado State Board of Medical Examiners on October 12, 2005, imposing a five-year probation period as a condition of her being granted a license to medicine in Colorado. *Candice Sobanski*, M.D., No. 2006-001019-

---

[3] CPHP is a nonprofit organization that administers several programs for physicians suffering from "emotional, psychological or medical problems" including an impaired physician evaluation and treatment referral program. *See Welcome*, CPHP, https://cphp.org/welcome/ (last visited July 7, 2026).

A, ¶ 9 (Colo. Bd. of Med. Exam'rs 2005),

https://www.dora.state.co.us/pls/real/DDMS_documents_api.download?p_file=F388641589/372

46_Page6_132324_31281.pdf.

> Dr. Fleming's January 22, 2024 letter to Dr. Sobanski's counsel concluded in this manner:

> Dr. Sobanski is trained and certified as an emergency physician, and that position necessarily puts immense responsibilities in her hands – she is responsible for guaranteeing the health and safety of countless lives. Based on my extensive work with this patient for more than a decade, my 47 years of experience in psychiatry, and my training both in psychotherapy and medication management, it is and remains my medical opinion that she is unable to perform the essential duties and obligations of her occupation (including, but not limited to, engaging in physician-patient interactions, making efficient medical determinations, working cohesively with staff) as a result of her anxiety and depression.

ECF No. 56-1 at 41. Provident replied to the correspondence from Mr. Irving (which included

Dr. Fleming's letter) on June 4, 2024, noting that "[i]n our January 30, 2023, letter your client

was provided a perfecting paragraph that extended your client an additional 30 days to submit

further documentation in support of her claim" and that she had not availed herself of that

opportunity. ECF No. 64-1 at 34. Provident further stated that because "[t]he information

provided in your letter dated April 08, 2024 is outside the time period provided" in the January

30, 2023 appeal decision, "[t]he appeal will not be reopened, and no additional appeal review is

available." *Id.*

### B.      Procedural History of the Litigation

On July 26, 2024, Dr. Sobanski initiated this action in the District Court for the City and

County of Denver, which Provident removed to this court on September 10, 2024. ECF No. 1.

In her complaint, Dr. Sobanski brings three claims against Provident. She pleads a

general breach of contract claim asserting that a breach occurred when Provident denied her

benefits under the Policy even though, per her allegations, she could no longer work as an emergency room physician due to a qualifying disability. ECF No. 4 ¶¶ 75-78. She also raises claims for common law bad faith breach of contract and for unreasonable delay or denial of insurance benefits under Colorado Revised Statute §§ 10-3-1115 and 10-3-1116. *Id.* ¶¶ 79-90. Provident denies that Dr. Sobanski has met her burden to establish a "proof of loss" necessary to prove an entitlement to long-term disability benefits under the Policy. Provident points to Dr. Sobanski's purported failure to provide treatment records from Dr. Fleming (or any other information) from which the insurer could assess any functional impairment, and Provident further denies that its conduct was otherwise improper. *See generally* Defendant's Answer to Plaintiff's Complaint, ECF No. 13 ¶¶ 6, 47, 51, 55, 57, 61, & *passim*.

### 1. Dr. Fleming's Deposition

According to Provident, Dr. Sobanski's claim that her practice as an emergency room physician posed a danger to patient safety was not made fully manifest until July 2, 2025, during the deposition of Dr. Fleming. ECF No. 74 at 2 ("At Dr. Fleming's deposition on July 2, 2025, he testified for the first time that Dr. Sobanski was a danger to patient safety.").

Dr. Fleming testified that Dr. Sobanski's "emotional struggles got to the point where it impaired her ability to function effectively and safely as an emergency room physician." Fleming Depo., ECF No. 66 at 14-15, 107:23-108:1. Specifically, Dr. Fleming explained that in certain situations, Dr. Sobanski had trouble communicating patient information to other physicians. ECF No. 54-1 at 5-8, 34:22-37:4. Dr. Sobanski's mental health conditions left her "tongue-tied in the conversation with another specialist," rendering her "humiliated, and then she would shut down, and then she wouldn't communicate the rest of what she knew about the patient." ECF No. 66 at

15-16, 108:20-109:1; *see also id.* at 16, 109:2-5 (explaining that this "pattern interfered with her ability to communicate with the team," and to "promote the best and necessary communication of information on the patient's behalf"). Dr. Fleming testified that, "as a result of Dr. Sobanski's medical issues, . . . there were occasions upon which she was presented with what she believed to be, in her medical judgment, a life or limb threatening situation," and when she was "challenged as to the seriousness of the situation, [was] unable to provide the full and complete medical picture that she was aware of that had led her to the conclusion of its seriousness[.]" *Id.* at 18-19, 111:24-112:7. Dr Fleming recalled a specific example of Dr. Sobanski's "lock[ing] up" in the face of push back from a supervising physician who disagreed with her medical judgment that a certain patient should be transferred to a hospital in Denver. *Id.* at 17-18, 110:12-111:5. As a result, the patient was discharged, only to return to the Greeley facility where Dr. Sobanski worked after his condition deteriorated. *Id.* at 18, 111:9-14.

In Dr. Fleming's opinion, Dr. Sobanski's inability to articulate the reasons for her medical judgments was a "disaster" for patient safety." *Id.* at 19, 112:10-12. Dr. Fleming "strongly endorse[d]" the proposition "that inadequate or poor communication is one of the leading causes of adverse patient outcomes[.]" *Id.* at 10, 98:16-21. Dr. Fleming believed that if Dr. Sobanski "continued to practice emergency room medicine, the community where she practiced would be less safe as a result." *Id.* at 21, 114:5-10.

### 2. Discovery Following Dr. Fleming's Deposition

On September 2, 2025, Provident served on Dr. Sobanski the three interrogatories that triggered the instant request for a protective order. ECF No. 54 at 3-4. The interrogatories tee off

Dr. Fleming's deposition testimony related to his opinion that Dr. Sobanski's continued practice

of emergency medicine posed a danger to her patients:

> **Interrogatory No. 5:**
>
> In his deposition, your attorney asked Dr. Fleming to "describe what the issues were with respect to [Dr. Sobanski's] various communication issues that . . . was the most important in terms of patient safety." (Dr. Fleming Deposition, at 108:16-19.) Dr. Fleming responded:
>
>> The most important was that Dr. Sobanski would get tongue-tied in the conversation with another specialist, initially tongue-tied when they would begin to challenge her. And then she would get humiliated, and then she would shut down, and then she wouldn't communicate the rest of what she knew about the patient. And . . . that pattern interfered with her ability to communicate with the team, promote the best and necessary communication of information on the patient's behalf. *(Id.*, at 108:20-109:5.)
>
> Your attorney subsequently asked, "In your opinion, how big of a problem is that for patient safety?" and Dr. Fleming responded, "That's a disaster." *(Id.*, at 112:10-12.)
>
> From January 1, 2020 through January 23, 2022, identify every healthcare provider with whom you had difficulty communicating on behalf of your patients, the date of each such incident, and whether your patient experienced an adverse outcome as a result. You should not include the patient's name or any identifying medical details.
>
> **Interrogatory No. 6:** For the time you worked at Team Health, identify every witness who observed you caring for patients and who can provide testimony as to whether there were any concerns for patient safety.
>
> **Interrogatory No. 7:** For the time you worked at Team Health, identify all other physicians who worked at the same time you were on shift.

ECF No. 54 at 3. Following a conferral on October 6, 2025, Provident agreed to narrow these

interrogatories to encompass the following information: "(1) reports from co-workers or others

regarding concerns for patient safety or community safety, or conversely, reports from co-workers or others showing Dr. Sobanski was doing a good job with patient safety; (2) a list of people with whom Dr. Sobanski had difficulty communicating (*e.g.* certain specialists); and (3) a list of people who worked most regularly with Dr. Sobanski on shift and saw her communicate with others." *See* ECF No. 64 at 5-6; *see also id.* at 15.[4]

On December 3, 2025, Provident filed a motion to compel Southern Colorado TMS Center, LLC, where Dr. Fleming serves as medical director, to comply with a third-party subpoena for medical records related to specific treatment Dr. Sobanski had received from Dr. Fleming. ECF No. 42 at 1-2. TMS Center produced those records to Provident on January 1, 2026, rendering the motion to compel moot. *See* ECF Nos. 115, 120.

Dr. Sobanski was deposed on December 19, 2025. In that deposition, she provided testimony tending to confirm that her former work colleagues would have been in a position to observe her performance. Dr. Sobanski testified that Team Health maintained a stable of approximately ten emergency medicine doctors who worked at Sterling and that one physician and two nurses would typically cover a shift. ECF No. 64-1 at 42-43, 14:24-257; *id.* at 44, 16:1-2. Dr. Sobanski recalled two instances in which someone had raised concerns about her treatment

---

[4] The parties have not submitted the conferral emails setting forth Provident's agreement, and the court observes some discrepancies between Provident's current description of the information it seeks and Dr. Sobanski's understanding of that information as reflected in her briefing. For example, Dr. Sobanski states—apparently quoting a version of an interrogatory provided to her attorneys—that "Provident seeks the identity of 'all other medical providers who worked with Dr. Sobanski on shift and had the opportunity to observe her performing her job duties, with specific focus on her ability to communicate with other providers.'" *See* ECF No. 53 at 11-12. This language is not contained in the narrowed iterations of the interrogatories Provident includes in its briefing. Regardless, the court will hold Provident to its statements in its response brief and will evaluate the appropriate scope of discovery on that basis.

of patients at Sterling. On one occasion, "[t]he nursing director was taking care of someone who was chronically ill and had gotten much worse, and she felt there was some delay in me seeing that patient and getting enough stuff started for him." *Id.* at 49, 28:4-7; *see also id.* at 18-21. Dr. Sobanski was also aware that, sometime in 2021, one nurse had asked not to be put on the same shift with her for reasons unknown to Dr. Sobanski. *Id.* at 51, 31:1-9. Per the instruction of her counsel, Dr. Sobanski did not identify the medical professionals involved in these complaints.

### 3.    Motion for Protective Order

On December 17, 2025, Dr. Sobanski filed the instant Motion seeking a protective order shielding her from responding to Interrogatories 5, 6, and 7, including the narrowed iterations of those interrogatories. ECF No. 53 at 1-2; *see also* ECF No. 54 at 3. In her Motion, Dr. Sobanski argues that the information Provident seeks—in particular, the impressions or opinions of her former coworkers—is minimally relevant to the issue of whether she was too disabled to perform her job and is requested solely for purposes of "harassment." *See* ECF No. 53 at 6-8; *see also* ECF No. 64-1 at 47-48, 22:25-23:9 (in Sobanski deposition, counsel asserting that interrogatory "asking about the people [Sobanski] worked with is harassment" and was "propounded for purposes of harassment"). Dr. Sobanski alleges she will suffer significant harm if forced to respond to these interrogatories. ECF No. 53 at 9-11. For its part, Provident counters that the observations of Dr. Sobanski's former colleagues are "critically relevant," given Dr. Fleming's deposition testimony that Dr. Sobanski "was a threat to her patients while she was practicing." ECF No. 64 at 9-13. Further, Provident rejects as unfounded the contention that Dr. Sobanski will be harmed by the disclosure of this information. *Id.* at 13-14.

For the reasons that follow, the court respectfully concludes that the interrogatories seek

relevant and proportional information and that Dr. Sobanski has failed to establish good cause for the protective order she seeks.

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Relevance under Rule 26(b)(1) is "broadly construed," and a request is considered relevant "if there is '*any possibility*' that the information sought may be relevant to any party's claim or defense." *Byron-Amen v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02364-NYW, 2022 WL 1567563, at *2 (D. Colo. May 18, 2022) (quoting *Martensen v. Koch*, 301 F.R.D. 562, 570 (D. Colo. 2014)) (emphasis added); *Brackett v. Walmart Inc.*, No. 20-cv-01304-KLM, 2021 WL 1749975, at *3 (D. Colo. May 4, 2021) ("[R]elevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told."). As for proportionality, "[t]he Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015

13

amendment). Generally, when the requested discovery appears relevant on its face, "the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (quotation omitted).

Rule 26(c)(1) authorizes the court, "for good cause," to issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery, limiting its scope, or prescribing a different discovery method. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of demonstrating good cause. *GSL Grp. Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020). To demonstrate good cause, the moving party must "show[] that the disclosure will work a clearly defined and serious injury" by "provid[ing] specific examples of harm that will be suffered because of the disclosure of the information. Broad allegations are insufficient." *Jackson v. United States*, 153 F.R.D. 646, 648 (D. Colo. 1993); *see also, e.g., In re HCP Sys., LLC*, 619 B.R. 479, 485 (Bankr. D.N.M. 2020) (to show good cause for a protective order, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements") (quotation omitted); *DiCesare v. Makinson*, No. 21-cv-231-RAW, 2024 WL 3066035, at *1 (E.D. Okla. June 20, 2024) (the moving "party must present concrete reasons justifying a protective order and not rest on unverified fears").

14

Finally, the court observes that "[d]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (citation modified) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

## ANALYSIS

### A.    The Interrogatories Seek Relevant and Proportional Information.

The court begins its evaluation of whether the information sought is protected from disclosure by first assessing whether the interrogatories, as narrowed by Provident, seek information that is relevant and proportional to the needs of the case. *See Mize v. Kai, Inc.*, No. 17-cv-00915-NYW, 2018 WL 1035084, at *4 (D. Colo. Feb. 23, 2018).

At the outset, Dr. Sobanski concedes that the information Provident seeks "will have *some*" relevance to Provident's defenses. ECF No. 53 at 7 (emphasis added). But she insists the relevance is minimal because the information only pertains to a single claim—the breach of contract claim—and, in her view, is unlikely to be dispositive on the issue of her disability. *Id.* at 6-7. Provident responds that Dr. Sobanski's breach of contract theory "rests on" Dr. Fleming's opinion that she was unable to perform "the substantial and material duties" of her job because "she was a threat to patient and community safety," and so the information is "critically relevant to Provident's defenses." ECF No. 64 at 9.

As Dr. Sobanski's concession of some degree of relevance acknowledges, courts in this District have concluded that discovery that may not have been obtained during the adjustment of a claim is not prohibited where the insured, as here, has elected to bring a general breach of contract claim. *See, e.g.*, *Rowell v. Northwestern Mut. Life Ins. Co.*, No. 21-cv-00098-PAB-NYW, 2021 WL 5072064, at \*4-5 (D. Colo. Aug. 23, 2021) (recognizing that "reasonableness is not an element of a breach of contract claim," and that "an insurer's failure to seek certain information during the adjustment of a claim does not necessarily form a bar to further discovery once litigation commences for breach of contract") (citing *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-00552-CMA-NRN, 2020 WL 5406130, at \*5 (D. Colo. Sept. 9, 2020) (finding *Schultz v. GEICO Cas. Co.*, 429 P.3d 844 (Colo. 2018), inapposite in a case where there was still an "underlying question as to whether there is coverage for the loss under the policy"); *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-01322-JLK-NYW, 2019 WL 11868519, at \*10 (D. Colo. July 19, 2019) ("This court finds *Schultz* distinguishable because in that case the plaintiff's physical condition was no longer at issue—the only remaining issue was whether the benefits paid to the plaintiff were unduly delayed. There can be no dispute that Ms. Anchondo-Galaviz's physical condition remains in controversy, in particular her neck and spine, because she continues to claim that State Farm breached its insurance contract with her by failing to pay her UIM benefits." (internal citation omitted)). This court is aware of no legal rule, and Dr. Sobanski points to none, that renders discovery of minimal or no relevance simply because it may relate to only one of several claims a litigant has elected to bring.

The court also respectfully disagrees with Dr. Sobanski's characterization of the interrogatories as designed to expose information of little consequence. The crux of this

16

contention is that any third-party reports or observations about her work performance will be

minimally probative of whether she was too disabled to work because the Policy "doesn't require

a showing that Dr. Sobanski [was] *so* disabled she threaten[ed] patient safety in order to access

benefits." ECF No. 53 at 6-7 (emphasis in original). Although technically true, the Policy *does*

require proof of loss. ECF No. 1-5 at 26. Here, Dr. Sobanski's proof of loss is predicated

primarily on Dr. Fleming's opinion that she was too disabled to "perform the substantial and

material duties" of an emergency room physician. *See* ECF No. 4 ¶¶ 25-26, 34-36. And Dr.

Fleming's opinion is based, in significant part, on his belief that Dr. Sobanski's psychiatric

conditions precluded her from communicating effectively with other medical professionals in the

emergency room, thereby jeopardizing patient safety. ECF No. 66 at 19, 112:13-16. Thus, there

can be no dispute that Dr. Sobanski has put her work performance at issue. *Cf. Doe v. Provident*

*Life & Acc. Ins. Co.*, 247 F.R.D. 218, 221 (D.D.C. 2008) (finding, in the case of an emergency

room physician who claimed to suffer from PTSD and sought benefits under a disability income

insurance policy with Provident, "that Defendant has rebutted Plaintiff's unsupported assertion

that the testing is 'needlessly intrusive' and has further satisfied the requirements [for an

independent medical examination under Federal Rule of Civil Procedure 35] by showing that the

Plaintiff has put his medical condition at issue").

     Dr. Sobanski's former colleagues were in a position to witness her performance firsthand.

Given that, the interrogatories easily fall within Rule 26(b)(1)'s "any possibility" standard for

relevant evidence. *See Byron-Amen*, 2022 WL 1567563, at *2. Dr. Sobanski has failed to

establish that the requested discovery does not come within the scope of this broad relevance

standard, or that the discovery Provident seeks "is of such marginal relevance that the potential

17

harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *See Simpson*, 220 F.R.D. at 359. The observations of Dr. Sobanski's coworkers will have some tendency to make more or less probable the fact of Dr. Sobanski's alleged inability to perform "the substantial and material duties" of her occupation—which she is obliged to show to recover under the Policy. *See* ECF No. 1-5 at 14. The court finds unpersuasive Dr. Sobanski's argument that her former coworkers are in no position to address this point because she "didn't confide in [them] about her severe, chronic mental health conditions," and she resigned before her conditions became severe enough to compromise patient safety. ECF No. 53 at 7-8. The point is not that Dr. Sobanski may have declined to verbalize her inner struggles but rather what her *actions* may have revealed to her coworkers. Indeed, Dr. Sobanski's own attorney sought clarity from Dr. Fleming that his opinion was not merely prognostic.[5]

Recall that when Dr. Fleming was asked if he was aware of occasions when Dr. Sobanski's conditions had impaired her ability to communicate patient information, he replied, "Yes." ECF No. 66 at 18, 111:22-112:7; *see also id.* at 17-18, 110:12-111:22 (describing the incident in which Sobanski was unable to advocate for her assessment that a patient should immediately have been transferred to a higher care level facility, resulting in the degeneration of his condition over a two-week period). And Dr. Fleming confirmed that these instances, and their attendant impact on patient safety, informed his opinion that Dr. Sobanski could no longer practice safely. *Id.* at 18-19, 11:22-112:7. The information Provident seeks by means of the interrogatories thus would tend to confirm or rebut a core aspect of Dr. Fleming's opinion that in

---

[5] In her reply brief, Dr. Sobanski denies initiating the line of questioning that led to Dr. Fleming's comments on patient safety. ECF No. 72 at 2-3. However, the identity of the party responsible for eliciting that testimony is, at least in this instance, quite beside the point.

turn goes to a foundational element of Dr. Sobanski's breach of contract claim: that Provident failed to comply with its performance obligations under the Policy. *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (defining four elements of a breach of contract claim under Colorado law: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages suffered by the plaintiff as a result of the defendant's breach).

In short, the information Provident seeks in the interrogatories indisputably falls within the broad parameters of relevance established in Rule 26.

As for the proportionality inquiry, the court begins by reiterating its observation that there appears to be a discrepancy between Provident's current articulation of the information it seeks and the description of that information it conveyed to Dr. Sobanski's counsel. *See supra* n.4. One point on which clarity is lacking is whether the narrowed requests contain any limitation as to timeframe. To the extent they do not, the court finds it proportional to the needs of the case to impose such a restriction, consistent with that contained in the original version of Interrogatory 5. Accordingly, the information to be produced in response to each of the interrogatories will be limited to the two-year time period from January 1, 2020, to January 23, 2022—an indisputably short period of time, and one focused on the last months of Dr. Sobanski's work at Sterling, when the circumstances that impelled her to resign presumably escalated and reached their apex. With that limitation, the court apprehends no offense to proportionality in the information sought in the interrogatories.

The court is unpersuaded to reach a different conclusion because Dr. Fleming has now provided his treatment records for Dr. Sobanski. *See* ECF No. 115 (notice of withdrawal of

19

motion to compel). Notwithstanding this production, there is still a degree of asymmetry between the parties' access to relevant information. As Provident notes, Dr. Sobanski, as an independent contractor, "had no supervisor or performance reviews," ECF No. 64 at 10, and so aside from Dr. Fleming's opinions, Provident has little information concerning Dr. Sobanski's final months of employment—information relevant to the critical question of her ability to perform "the substantial and material duties" of an emergency room physician. *See* ECF No. 1-5 at 14. Dr. Sobanski insists that Dr. Fleming's opinions are adequate for purposes of Provident's defense, and that "Provident can explore the bases of Dr. Fleming's opinions with him" through cross-examination. ECF No. 53 at 8. This position, however, is at odds with the rules of discovery, which do not permit an opposing party to determine what form of discovery its opponent may seek. *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 940 n.46 (N.D. Ill. 2021) ("[O]pposing counsel does not get to decide what is important to an adversary . . . . There is no rule that allows opposing counsel to determine disclosures and productions based upon what he thinks is important.").

Put otherwise, Provident is not obliged to blindly accede to the accuracy of Dr. Fleming's opinions. As pertinent here, Provident has the right to probe the factual bases for Dr. Fleming's contentions and to see if they withstand scrutiny when viewed in conjunction with the direct, day-to-day observations of Dr. Sobanski's colleagues at Sterling—medical professionals with experience working in an emergency room. It may be that these colleague-observers will attest to facts that affirm Dr. Fleming's view that Dr. Sobanski was too compromised to continue to practice medicine in an emergency room setting. Or it may be that they will describe, with factual specificity, the integrity of Dr. Sobanski's medical judgment and the excellence of the

20

care she provided. Either way, there is no disproportionality in Provident's being allowed to discover that information.

The court respectfully concludes that Provident's discovery requests—as circumscribed by Provident and further narrowed by the court—are both relevant and proportional to the needs of the case, and Dr. Sobanski has failed to show that the burden of responding to these requests will outweigh their likely benefit.

**B.      Dr. Sobanski Has Not Shown Good Cause for Entry of a Protective Order.**

The court now turns to the question whether the otherwise relevant and proportional information sought in the interrogatories should nevertheless be shielded from production by a protective order, as Dr. Sobanski urges. The court concludes that Dr. Sobanski has not met her burden to demonstrate good cause for such an exclusion. *See, e.g.*, *GSL Grp. Inc.*, 2020 WL 12813087, at *2. The court addresses each of Dr. Sobanski's arguments, in turn.

Dr. Sobanski first asserts that she should be protected from responding to the interrogatories, even in their more restricted form, because they seek privileged information. *See* ECF No. 53 at 9. Yet, Dr. Sobanski identifies no privilege that would bar one co-worker or supervisor from providing testimony about his or her perception of the work of a fellow employee or a supervisee, and this court is aware of no such privilege. Notably, discovery of this type is permitted as a matter of course in the analogous context of employment discrimination claims where the performance of a physician-employee is at issue. *See, e.g.*, *Schacht v. McDonough*, No. 23-cv-00709-PAB-SBP, 2025 WL 1207598, at *3-7 (D. Colo. Apr. 27, 2025) (approving discovery concerning comparator physicians for a physician raising discrimination claims under Title VII and the Americans with Disabilities Act against her former employer); *see*

21

*also* ECF No. 50 at 18 (in scheduling order, identifying as witnesses former physician supervisors and co-workers of the plaintiff-physician). The court discerns no material difference between such cases and the instant matter, where Dr. Sobanski's work performance—that is, her alleged inability to perform "the substantial and material duties" of an emergency room physician, *see* ECF No. 1-5 at 14—lies at the heart of the dispute. Provident is allowed to test the veracity of Dr. Sobanski's contention (and her psychiatrist's opinion) that she was too compromised to do that work; the observations of her former co-workers and other medical professionals with whom she interacted at Sterling speak to that essential aspect of Dr. Sobanski's case against Provident and are not privileged.[6]

Furthermore, the court finds no basis to countenance Dr. Sobanski's unsupported hypothesis that the discovery Provident seeks will somehow "implicate licensure and ethical issues" for her former co-workers.[7] *See* ECF No. 53 at 10. Dr. Sobanski's former colleagues may have observations about her work performance in an emergency room setting that would not necessarily have triggered an obligation to make a formal report about her work. Put simply, the specter of "licensure and ethical issues" is wholly conjectural at this juncture and does not establish that Provident should be prohibited from making inquiries about Dr. Sobanski's former colleagues and other medical professionals with whom she interacted. With regard to any

---

[6] Dr. Sobanski notes that, by statute, "peer-review information is highly confidential," ECF No. 53 at 1 (citing Colo. Rev. Stat. § 13-21-110), but there is nothing in the instant record to indicate that peer-review information is in play here. The court therefore finds that statute inapposite for purposes of the present analysis.

[7] If that were so, former colleague-witnesses of plaintiffs in myriad employment cases would find themselves at odds with medical licensure boards across the United States. This court is aware of no such trend, and Dr. Sobanski points to no concrete evidence supporting that theory.

22

supposed exposure of patient information attendant on this discovery, *see id.* at 9—a risk that could arise in most civil litigation involving medical professionals—to the extent the protective order entered in this case (ECF No. 28) does not adequately address confidentiality concerns, this court will assist the parties in implementing any additional protective measures that may be required. What the court will *not* endorse is Dr. Sobanski's insistence that Provident must take it on faith, based solely on her own statement and the opinion of a treating psychiatrist who did not observe her in the workplace, that her mental health was too compromised to perform the substantial and material duties of her job. In this context, Dr. Sobanski has failed to show that the narrow discovery the court approves here inflicts on her any legally impermissible "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c).

The court appreciates Dr. Sobanski's reticence to have her former colleagues learn about this litigation and the sensitive medical conditions which precipitated it. *See* ECF No. 72 at 5. But the court must respectfully disagree with Dr. Sobanski's hyperbolic characterization of what is being asked of her in connection with the instant discovery. She is decidedly *not* being required to "flay herself open so that her professional community will have unbridled contact with her insurance carrier." *See id.* The court has approved only a narrow universe of inquiry, limited to a narrow timeframe. Nor does the court find any support for Dr. Sobanski's characterization of Provident's counsel as "bent on publicizing [Dr. Sobanski's] condition." *See id.* Rather, the discovery authorized here logically flows from Dr. Sobanski's claim, supported by the opinions of her treating psychiatrist, that she is unable to work as an emergency room physician. Provident is allowed to explore whether the point of view espoused by Dr. Sobanski and her physician—which, naturally, is in accord with her self-interest—is shared by those

23

persons who were in a position to observe her actions as a practicing physician on a daily basis.[8] This is discovery of an entirely routine and expected sort in a case in which a litigant seeks hundreds of thousands of dollars in damages, and it does not transgress the line into Rule 26(c) territory. The court is sympathetic to the fact that Dr. Sobanski finds this situation deeply embarrassing, but the discovery process is often marked by significant discomfort for the parties. There is nothing exceptional on this record that reveals "a clearly defined and serious injury" if Provident is allowed to access the disputed information. *See Jackson*, 153 F.R.D. at 648.

In reaching this conclusion, the court considers the broader factual context concerning Dr. Sobanski's medical practice in Colorado. More than twenty years ago, as a condition of her being granted a license to practice medicine in this state, Dr. Sobanski publicly acknowledged that she suffered from certain medical conditions for which she submitted to five years of monitoring by the Colorado Physician's Health Program. *See* Candice Sobanski, M.D., No. 2006-001019-A, ¶ 6 (Colo. Bd. of Med. Exam'rs 2005). The court honors Dr. Sobanski for taking ownership of these challenging issues—and for the medical care she provided to Colorado citizens for many years—but for purposes of resolving the instant dispute, the court must acknowledge that information regarding Dr. Sobanski's medical issues, which is seemingly related to those that prompted the instant lawsuit, has been available to the public for two decades. In light of these circumstances, and with all respect to Dr. Sobanski, she cannot credibly

---

[8] It may be that Dr. Sobanski's former colleagues will articulate a contrary view, but not necessarily. It strikes the court as a toss-up whether the information ultimately derived from the limited discovery approved here will lend greater support to Dr. Sobanski's position or to Provident's.

claim that a specific injury of sufficiently serious magnitude will flow from her responding to the discovery requests approved by the court here.

In sum, Dr. Sobanski has failed to establish good cause for issuing a protective order relieving her of the duty to respond to Provident's interrogatories, as limited in the manner articulated by the court in this Order.

**CONCLUSION**

Consistent with the foregoing, **IT IS RESPECTFULLY ORDERED** as follows:

(1)     Plaintiff's Motion for Protective Order for Relief from Certain Discovery Requests, ECF No. 53, is **DENIED**; and

(2)     On or before **July 28, 2026**, Plaintiff shall respond to Defendant's Interrogatories 5, 6, and 7, limited to the production of the following information **for the period from January 1, 2020, to January 23, 2022**:

> **Interrogatory No. 5:** Reports from co-workers or others regarding concerns for patient safety or community safety, or conversely, reports from co-workers or others showing Dr. Sobanski was doing a good job with patient safety;
>
> **Interrogatory No. 6:** A list of people with whom Dr. Sobanski had difficulty communicating (*e.g.* certain specialists); and
>
> **Interrogatory No. 7:** A list of people who worked most regularly with Dr. Sobanski on shift and saw her communicate with others.

As previously noted in the docket of these proceedings, the court will address all remaining scheduling order deadlines at the July 15, 2026 Status Conference. *See* ECF No. 119.[9]

---

[9] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado.

25

DATED: July 7, 2026                              BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

---

28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection
will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See
Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver
rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119,
1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require
review, including when a "pro se litigant has not been informed of the time period for objecting
and the consequences of failing to object").

26