# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02485-PAB-SBP

CANDICE A. SOBANSKI, M.D.,

      Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,

      Defendant.

---

## ORDER GRANTING MOTION TO AMEND

---

**Susan Prose, United States Magistrate Judge**

      This matter comes before the court on Plaintiff Dr. Candice A. Sobanski's Motion to Amend Complaint to Add Claim for Exemplary Damages (the "Motion" or "Motion to Amend"). ECF No. 74. Defendant Provident Life and Accident Insurance Company ("Provident") filed a response (ECF No. 88), and Dr. Sobanski replied (ECF No. 98). The court considers the Motion pursuant to 28 U.S.C. § 636(b)(1), the Order Referring Case dated January 16, 2025 (ECF No. 20), and the Memorandum dated December 17, 2025 (ECF No. 55). Upon review of the Motion and the related briefing, the entire docket, and the applicable law, the court respectfully **GRANTS** the Motion to Amend.[1]

---

[1] "Whether motions to amend are dispositive is an unsettled issue in the 10th Circuit." *Cano-Rodriguez v. Adams Cty. Sch. Dist. No. 14*, No. 19-cv-01370-CMA-KLM, 2020 WL 6049595, at *1 n.2 (D. Colo. July 23, 2020), *report and recommendation adopted*, 2020 WL 4593219 (D. Colo. Aug. 11, 2020). Courts in this District have treated orders granting motions to amend as

## BACKGROUND

This case involves a dispute over Provident's decision to deny Dr. Sobanski disability benefits after she resigned from her position as an emergency room physician. *See* ECF No. 4. In the operative pleading (ECF No. 4) ("Complaint"), Dr. Sobanski alleges that she left her job in January 2022 after several psychiatric conditions left her unable to work. *Id.* ¶¶ 6, 22-26. In July 2022, Dr. Sobanski filed a claim for disability benefits pursuant to an individual disability insurance policy that she held with Provident (the "Policy"). *Id.* ¶¶ 27-22. On November 22, 2022, Provident denied Dr. Sobanski's claim. ECF No. 88-1 at 47-51. The insurer said it had requested medical records from Dr. Sobanski's treating physician on several occasions but "ha[d] not received a response." *Id.* at 47-48. Because it had not received those records, Provident was "not able to continue [its] evaluation" of Dr. Sobanski's claim. *Id.* at 48-49. In a January 2023 letter upholding that decision, Provident wrote that it still had not received the records. ECF No. 64-1 at 28-32.

In July 2024, Dr. Sobanski filed her Complaint raising claims for breach of contract, the common law tort of bad faith breach of insurance contract, and a statutory bad faith claim premised on Provident's denial of benefits under the Policy, allegedly without a reasonable basis

---

non-dispositive, but "many courts have held that a recommendation to deny a motion to amend . . . should be viewed as a dispositive ruling because it precludes the filing of certain claims." *Crocs, Inc. v. Effervescent, Inc.*, Nos. 06-cv-00605-PAB-KMT, No. 16-cv-02004-PAB-KMT, 2021 WL 941828, at *2 n.1. (D. Colo. Mar. 11, 2021) (quotation omitted); *see also Bullock v. Daimler Trucks N. Am., LLC*, No. 08-cv-00491-PAB-MEH, 2010 WL 1286079, at *1 (D. Colo. Mar. 29, 2010) (observing that it "makes good sense" for a magistrate judge to distinguish between allowing and denying an amendment in considering whether to issue an order or recommendation). Because this court finds that the Motion to Amend should be granted, the undersigned proceeds by order rather than recommendation.

under Colorado Revised Statute § 10-3-1115(1)(a). ECF No. 4 ¶¶ 75-90. Of particular relevance

to the court's analysis of the exemplary damages question are Dr. Sobanski's bad faith claims,

which focus on Provident's conduct during the adjustment and denial of the claim. *See id.* ¶ 81.

Specifically, Dr. Sobanski asserts that Provident acted in bad faith by, *inter alia*, failing to

properly investigate the claim, misrepresenting the terms of the Policy and other "pertinent facts

regarding insurance policy provision[s]," and "[f]ailing to recommend or request alternate

methods by which Dr. Sobanski could prove her loss." *Id.* This court entered a scheduling order

on February 5, 2025, in which it was noted that Dr. Sobanski "reserves the right to amend her

complaint to seek[] punitive damages as provided under Colorado law." ECF No. 23 at 12, 17.

On January 28, 2026, Dr. Sobanski filed the instant Motion, in which seeks to add to her

pleading a claim for exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102. ECF No. 74 at

1-2, 19.

## LEGAL STANDARDS

Ordinarily, Rules 15(a)(2) and 16(b)(4) of the Federal Rules of Civil Procedure would

apply where, as here, a party seeks to amend its pleading after the deadline set in the scheduling

order.[2] *See Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

However, amendments concerning exemplary damages are governed by Colo. Rev. Stat. § 13-21-

102. *See Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL 4408254, at *7 (D. Colo.

July 7, 2023) (recognizing that "courts in this District have held that § 13-21-102, rather than

Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary

damages"). Courts in this District consistently have found no direct conflict between this statute

---

[2] The deadline for amending the pleadings was March 5, 2025. ECF No. 23 at 14.

3

and the Federal Rules of Civil Procedure. *See, e.g.*, *id.* (finding that the application of § 13-21-102 "would not result in forum shopping or the inequitable administration of the law") (collecting cases).

Under § 13-21-102, a plaintiff cannot seek exemplary damages in the initial pleading and may seek to amend the pleading to add an exemplary damages claim "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." *See* Colo. Rev. Stat. § 13-21-102(1.5)(a). Even when § 13-21-102 applies, however, "the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice"—which mirrors the Rule 15(a) standard. *See Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *2 (D. Colo. Oct. 10, 2023); *see also Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("A trial court may properly deny a motion to amend because of delay, bad faith, undue expense, or other demonstrable prejudice.").

Exemplary damages are permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct[.]" Colo. Rev. Stat. § 13-21-102(1)(a). Here, Dr. Sobanski alleges that Provident's actions were willful and wanton. *See generally* ECF No. 74. Willful and wanton conduct is conduct that is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo Rev. Stat. § 13-21-102(1)(b). In other words, "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13-21-102 are met." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59,

4

66 (Colo. 2005). "Simple negligence cannot support such an award." *Blood v. Qwest Servs.*, 224

P.3d 301, 314 (Colo. App. 2009). The purpose of awarding punitive damages is to punish the

wrongdoer and not to compensate for injuries. *See Lira v. Shelter Ins.*, 913 P.2d 514, 517 (Colo.

1996).

As to the requirement of a prima facie showing under § 13-21-102(1.5)(a), "[p]rima facie

evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at

449. A litigant makes this showing by presenting evidence demonstrating "a reasonable

likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting

*Leidholt v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)). "At this stage of the litigation, the

Court is only concerned with whether the evidence, when viewed in the light most favorable to

Plaintiffs, is sufficient to make out a prima facie case of willful and wanton behavior for the

purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not

whether such evidence is sufficient to defeat a motion for summary judgment or to result in a

jury verdict in Plaintiffs' favor." *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-

cv-01301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018); *see also Am. Econ. Ins.

Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *4 (D.

Colo. Jan. 17, 2007) (recognizing that the court is "concerned here only with the preliminary

question of whether [the plaintiffs] have made a prima facie case under § 13-21-102(1.5)(a), not

with summary judgment").

The plaintiff's evidentiary burden on a motion to amend pursuant to § 13-21-102 is "an

admittedly low threshold[.]" *Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020

WL 6290375, at *5 (D. Colo. Oct. 27, 2020). And the question of whether a plaintiff has adduced

sufficient proof to add a claim for exemplary damages "lies within the sound discretion of the trial court." *Stamp*, 172 P.3d at 449.

## ANALYSIS

In her Motion to Amend, Dr. Sobanski seeks to add a claim for exemplary damages based on Provident's allegedly willful and wanton actions (1) by misclassifying Dr. Sobanski's claim as being controlled by the Employment Retirement Income Security Act ("ERISA"); (2) by failing to properly train its employees "as to the rules and regulations for claim handling"; (3) by failing to investigate the claim; (4) by failing to properly administer the appeal process; and (5) by misrepresenting the terms of the Policy. ECF No. 74 at 5-19. Provident responds that its conduct during the claim handling process—such as flagging the claim as ERISA-controlled and requesting additional medical records—was reasonable under the circumstances. ECF No. 88 at 8-16. Further, Dr. Sobanski had the burden of proving her loss, Provident says, and the insurer gave her ample time to respond to its requests. *Id.* at 8-12. Provident also asserts that the Motion is untimely and that granting it would unduly prejudice Provident. *Id.* at 17-18.

The court first considers whether Dr. Sobanski has made a prima facie showing of a triable issue on exemplary damages. Then the court assesses whether permitting amendment would improperly prejudice Provident.

## I.    Prima Facie Evidence for Exemplary Damages

Given the voluminous factual allegations in the Motion, the court begins by summarizing Dr. Sobanski's arguments, their attendant factual bases, and Provident's responses. Once the parties' positions are fully delineated, the court will consider whether Dr. Sobanski's evidence suffices to make a prima facie showing of willful and wanton conduct by Provident.

6

### A.  Categories of Evidence

***ERISA misclassification.*** Neither party disputes that Provident incorrectly flagged Dr. Sobanski's Policy as controlled by ERISA. See ECF No. 88 at 4. But Dr. Sobanski contends that Provident did so as "a deception, which actively misled the insured to believe that her *only* option was to give Provident another bite at the apple, that she needed to spend more time dealing with Provident before filing a case, and that her remedies were limited to those afforded by ERISA." ECF No. 74 at 6 n.2 (emphasis in original). To accomplish this, Dr. Sobanski asserts that Provident employees "use a biased algorithm at the outset to call a claim ERISA-controlled," and that classification is then "given the imprimatur of approval" through subsequent layers of uncritical review. *Id.* at 7.

In support of these contentions, Dr. Sobanski points to the following evidence:

- Provident's internal policies state that a disability benefit specialist ("DBS") "must determine if a claim for benefits is governed by ERISA in order to ensure that all requirements and timelines are met." ECF No. 74-4 at 1.

- Michelle Backus, the DBS who handled Dr. Sobanski's claim, was neither trained by Provident nor aware of the differences between employer-sponsored plans that fall under ERISA and employer-sponsored plans that do not. Backus Depo., ECF No. 74-3 at 33:20-34:10.

- Ms. Backus did not know who decided which claims were governed by ERISA, but claims would already be flagged as ERISA-controlled when they arrived at her desk. *Id.* at 34:11-35:12.

- Rebecca McGowan, an intake specialist with Provident who entered the data for Dr. Sobanski's claim, said Provident's computer system automatically identified Dr. Sobanski's claim as an "employer level" plan when she entered the Policy number. McGowan Depo., ECF No. 74-6 at 22:17-23:1.

- Afterward, another employee used Ms. McGowan's entry to generate a "policy

coverage summary," which flagged several "ERISA indicators" for the Policy despite no employer being associated with the Policy. ECF No. 74-7 at 7.

- Based on the ERISA indicators flagged in the Policy coverage summary, the claim file's "policy analysis" flagged the claim as governed by ERISA. *Id.* at 1-2.

- There was "no higher-level review" of the system's progression from ERISA indicators to designating the claim as ERISA-controlled. ECF No. 74 at 7.

- Ms. Backus said it was "a mistake" to designate the Policy as controlled by ERISA. ECF No. 74-3 at 150:7-15.

*See generally* ECF No. 74 at 5-8. Dr. Sobanski bolsters her factual account with the report from her insurance expert, Elliott S. Flood, in which he asserts that Provident has engaged in "a conscientious effort" to "over apply ERISA classifications to" individual insurance policies because it benefits the insurer. ECF No. 74-1 ("Flood Report") at 14. To that end, Provident has intentionally structured itself to encourage the incorrect classification of claims as subject to ERISA, the Flood Report says. *Id.* at 12-18.

Provident denies that the classification of a claim as subject to ERISA is as simple as identifying an associated employer: "ERISA applicability involves an intricate legal and factual analysis that often cannot occur until litigation." ECF No. 88 at 13. Furthermore, Provident asserts, "ERISA is not always readily apparent from a simple policy review." *Id.* (citing cases suggesting the complexity of determining the applicability of ERISA). In Dr. Sobanski's case, "there were many indicia of ERISA [applicability] due to Loyola's[3] role in" procuring the Policy. *Id.* at 14. In light of those indicators, the decision to classify the claim as ERISA-controlled "was

---

[3] Dr. Sobanski attended medical school at Loyola University Chicago's Stritch School of Medicine. ECF No. 88 at 2.

not a mistake," and even if it were, "a mistake . . . is not, by its very definition, willful and wanton," Provident says. *Id.* at 15. Provident attacks Dr. Sobanski's reliance on Ms. Backus's deposition testimony, noting that Ms. Backus "did not play any role in determining that" ERISA applied to the claim. *Id.*; *see also* Backus Depo., ECF No. 88-1 at 121-22, 33:20-24, 34:11-17.

Provident also challenges the assertion that it systematically misclassifies policies as ERISA-controlled. ECF No. 88 at 15-16. It points to an internal report, produced in response to a discovery request, that found nine misclassified individual disability claims out of 2,616 audited claims between 2022 and 2024. *Id.*; *see also* ECF No. 88-1 at 134-35. Provident further disputes the proposition that ERISA is harmful to the insured. ECF No. 88 at 16. Provident points to its expert report from Debra Conner, an attorney, in which Ms. Conner argues that ERISA imposes more rigorous requirements on insurers than state laws. ECF No. 88 at 16; *see also* Conner Report, ECF No. 88-1 at 89 ("The ERISA regulations, especially since the 2017 amendments to the claim regulations, have become more complex for insurers with respect to claim handling, timeframes for adjudication of claims, interactions with claimants, exhaustion of remedies, and a full and fair appeal process, etc."). In this case, Provident says Dr. Sobanski benefited from the mistake about ERISA because she "was granted appeal rights when her policy does not confer those rights." ECF No. 88 at 16. Finally, Provident questions whether the ERISA designation had any practical effect on the claim given that Dr. Sobanski "testified that she did not even know what ERISA is" and that the designation "did not inform the steps she took on her claim." *Id.*; *see also* Sobanski Depo., ECF No. 88-1 at 12, 94:21-22.

***Failure to train.*** Dr. Sobanski asserts that Provident failed to train its employees on the law applicable to insurance claims, which "constitutes a willful failure to ensure claims are

handled properly." ECF No. 74 at 8-9. She points to the following evidence to support that

assertion:

- Ms. Backus had not heard of the implied covenant of good faith and fair dealing. ECF No. 74-3 at 26:1-3.

- When asked if she was required to adhere to the duty of good faith and fair dealing when handling insurance claims, Ms. Backus responded, "Yes. If it's reasonable, yes."[4] *Id.* at 26:14-17.

- When asked if she had had any training to familiarize herself with the laws and regulations applicable to insurance claims in Colorado, Ms. Backus said, "I don't remember." *Id.* at 23:16-19.

- Ms. Backus had heard of the Unfair Claim Settlement Practices Act but did not "know the specifics." *Id.* at 24:2-5.

- Ms. Backus did not know whether uncertainty regarding the existence of a disability was resolved in favor of the insurer or the insured. *Id.* at 30:12-18.

*See generally* ECF No. 74 at 8-9. Dr. Sobanski bolsters these facts with the Flood Report, which

describes Ms. Backus's testimony as displaying a "shocking lack of familiarity with governing

law." ECF No. 74-1 at 21.

Provident does not directly respond to Dr. Sobanski's failure-to-train argument, asserting

instead that Ms. Backus "is not a lawyer and is not qualified to perform an ERISA analysis."

ECF No. 88 at 14. Further, Provident argues that Dr. Sobanski "cites no case law imposing the

duty to perform a legal analysis on non-lawyer claim employees." *Id.*

---

[4] Dr. Sobanski asserts Ms. Backus "couldn't define good faith beyond the word 'reasonable.'" ECF No. 74 at 8. However, the transcript does not show that Ms. Backus was ever asked to define "good faith." *See* ECF No. 74-3 at 26:1-17.

***Failure to investigate.*** Dr. Sobanski next argues that Provident's handling of her claim was "defined by reckless investigative conduct, and a willful disregard for [her] rights and interests." ECF No. 74 at 9. Specifically, she alleges Provident: (1) requested contemporaneous psychiatric notes from Dr. Fleming despite knowing it had not obtained the proper authorization, yet it failed to notify Dr. Sobanski that it needed the authorization; (2) authorized Dr. Sobanski to submit a treatment narrative from Dr. Fleming in lieu of records and then rejected the summary as insufficient; (3) failed to offer Dr. Sobanski any alternative method of proving her claim; and (4) relied on a nonphysician's opinion that Dr. Sobanski had not provided adequate proof of her disability despite Dr. Fleming's opinion to the contrary. *Id.* at 9-14. In support of these arguments, Dr. Sobanski points to the following evidence:

- Provident's internal policies recognize that the Health Insurance Portability and Accountability Act requires executing "a separate *Authorization*" for the release of contemporaneous psychotherapy notes. ECF No. 74-4 at 7 (emphasis in original).

- Provident never asked Dr. Sobanski to execute an authorization for psychotherapy notes. ECF No. 74 at 9.

- Provident sent Dr. Fleming a general authorization in July and August 2022, "noting internally (without telling Dr. Sobanski) it didn't have the correct release." *Id.* at 10; *see also* ECF No. 74-7 at 6.

- Provident notified Dr. Sobanski "for the first time" that it had not received any records from Dr. Fleming on September 9, 2022. ECF No. 74 at 10; *see also* ECF No. 74-7 at 10.

- In August 2022, Provident wrote that "[i]f Dr. Fleming is not willing to provide the requested records, please have him provide a detailed treatment/narrative summary in support of" Dr. Sobanski's disability. ECF No. 74-7 at 9.

- In October 2022, Provident told Dr. Sobanski that she was required to provide

11

supporting information "within 180 days of [Provident's] request." *Id.* at 16.

- The Policy does not include a 180-day response requirement. *See* ECF No. 1-5 at 1-32.

- In November 2022, Provident asked Dr. Sobanski whether she had any nonphysician providers. ECF No. 74-7 at 18.

- Dr. Sobanski's therapist, Beth Doyle, provided Provident with a treatment summary that advised Provident to contact her if the insurer had "any further questions regarding" Dr. Sobanski's claim. *Id.* at 20-21.

- On November 15, 2022, Dr. Fleming's office notified Provident that Dr. Fleming had been "extremely ill" and, as a result, "ha[d] been out of the office the last month." *Id.* at 22.

- On November 17, 2022, a forum of Provident employees determined that it had insufficient information to assess Dr. Sobanski's claim. *Id.* at 23-24.

- The forum's decision was based on the assessment of a clinician, Maureen LaPrade, who wrote in the claim file that "[w]ithout Dr. Fleming's records," Provident was "unable to determine" how Dr. Sobanski's depression had worsened to the point of disability. *Id.* at 24; ECF No. 74-3 at 129:9-14 (stating Backus "deferred completely" to LaPrade).

- Ms. LaPrade thought Provident could have explored alternative avenues for obtaining information about Dr. Sobanski's condition, such as by having a representative visit her. LaPrade Depo., ECF No. 74-9 at 107:20-108:11.

- Ms. LaPrade, when asked whether it was her understanding that a DBS could rely solely on her opinion to decide "whether there was adequate proof of loss" for a claim, replied, "No." *Id.* at 46:14-18.

ECF No. 74 at 9-14. The Flood Report adds that "a reasonable insurer would not issue an

adverse benefit determination without having made all reasonable efforts to adjust the claim."

ECF No. 74-1 at 31. Additionally, Dr. Sobanski's expert witness Eric Drogin, a clinical and

forensic psychologist, opines that Dr. Fleming's and Ms. Doyle's treatment summaries are "illuminating" and that "their lack of contemporaneity is neither unusual nor a degradation of their value as medical records." ECF No. 74-10 at 8. Dr. Drogin asserts that Provident could have conducted "an independent review of Dr. Sobanski by qualified personnel." *Id.*

Provident disputes the contention that it intentionally requested psychiatric notes without executing the proper authorization; rather, it avers that its requests to Dr. Fleming were "not for psychotherapy notes. [They were] for *any* treatment records." ECF No. 88 at 11 (emphasis in original). Provident observes that, "[a]lternatively, Dr. Sobanski could have requested and obtained all her own records." *Id.* at 12. Provident further asserts that there is nothing remarkable about requesting medical records to support a disability claim. *Id.* at 8. Provident notes that Dr. Sobanski "did not provide a single contemporaneous medical record or treatment note" during the period between filing her claim and filing this lawsuit. *Id.* Provident also challenges the reliability of Dr. Fleming's attending physician summary ("APS"), arguing that the opinion of an attending physician is frequently unreliable and that insurers routinely ask for records to substantiate such statements. *Id.* at 8-9.

***Mishandling the appeals process.*** Dr. Sobanski alleges several instances of willful and wanton conduct in Provident's handling of her appeal. Specifically, she accuses Provident of acting recklessly by requiring her to undertake an appeal despite the Policy containing no such provision; by "fail[ing] to document fundamental parts of the claim process"; by "fail[ing] to assess new information" submitted by Dr. Sobanski; and by "insist[ing] that it could only evaluate the claim with contemporaneous notes from Dr. Fleming," despite knowing it did not have the proper authorization. ECF No. 74 at 14-19. Dr. Sobanski points to the following

13

supporting evidence:

- In December 2022, Dr. Fleming sent Provident a new APS, which briefly summarized Dr. Sobanski's treatment and noted her diagnoses, including post-traumatic stress disorder. ECF No. 74-7 at 28.

- Appeal specialist Teresa Ward said she drafted a denial letter, which was ultimately not used, but did not save a copy of the letter. *See* Ward Depo., ECF No. 74-5 at 118:5-13.

- In January 2023, Provident again told Dr. Sobanski that it could not substantiate her disability claim without records from Dr. Fleming and that it would deny the appeal if records were not provided. ECF No. 74-7 at 32.

- Ms. Ward said that Provident did not seek any additional medical review of Dr. Fleming's December 2022 letter "because there was no further medical information that was provided that warranted a review." ECF No. 74-5 at 31:15-24.

- Ms. Ward called Dr. Sobanski on January 13, 2023, and told her that Provident "need[ed] the actual treatment notes" from Dr. Fleming. ECF No. 74-7 at 32.

- Ms. Ward testified that she would have reviewed what documents had previously been requested before denying an appeal. ECF No. 74-5 at 104:17-105:9.

- The discussions between Ms. Ward and another Provident employee that led to the decision not to seek additional medical review were not documented. *Id.* at 42:12-43:1.

- In a January 2023 letter denying Dr. Sobanski's appeal, Provident advised her that she was entitled "to bring a civil suit under section 502(a) of" ERISA, despite ERISA being inapplicable to the claim. ECF No. 74-7 at 34.

- In December 2023, Dr. Sobanski's attorney contacted Ms. Ward to inquire "what was needed" to reopen the claim; Ms. Ward responded that Provident had "no medical records and would need a detailed rationale for why [Dr. Sobanski] cannot work." *Id.* at 36.

14

- In April 2024, Dr. Sobanski submitted a three-page letter from Dr. Fleming to Provident, which provided a detailed assessment of her psychiatric conditions, treatment history, and her inability to work as an emergency room physician. *Id.* at 37-41.

- Ms. Ward discussed the submission with another employee and decided not to revisit the earlier denial; this discussion was not documented. ECF No. 74-5 at 134:12-135:9.

- On April 9, 2024, Provident notified Dr. Sobanski that it was "outside the time period provided" to revisit its prior decision to deny her claim and that "no additional appeal review is available." ECF No. 74-7 at 42.

ECF No. 74 at 14-19. Provident asserts that the appeal process it offered Dr. Sobanski in fact benefited her because "her policy does not confer those [appeal] rights." ECF No. 88 at 2, 16. Provident emphasizes Dr. Sobanski's testimony that the appeal process "had no effect on the way she pursued her claim." *Id.* at 2; *see also* ECF No. 88-1 at 12, 94:5-10 ("What I want to know is if you would have done anything differently if the letter hadn't said you have the right to appeal? . . . A. I really don't know the answer. I don't know."). Regardless, Provident says the appeal process in fact had no effect on its decision to deny the claim: "If medical records from Dr. Fleming or Ms. Doyle were received even after the appeal process had been completed, Provident would have considered them." ECF No. 88 at 8.

### B.    Prima Facie Showing of Willful and Wanton Conduct

Having considered both parties' positions, the relevant facts, and the applicable law, the undersigned respectfully concludes that Dr. Sobanski has made a prima facie showing of willful and wanton conduct by Provident so as to support a claim for exemplary damages. The basis for the court's conclusion is severalfold.

First, Dr. Sobanski has set forth allegations, sufficiently reinforced by supporting facts, that could reasonably support a jury's finding that Provident, in reckless disregard of her rights under the Policy, classified her claim as controlled by ERISA. *Stamp*, 172 P.3d at 449 (a litigant satisfies the prima facie standard by presenting evidence establishing "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution"). Provident does not dispute that Dr. Sobanski's Policy was erroneously flagged as ERISA-controlled, ECF No. 88 at 13, and the record tends to support the claim that this occurred without any meaningful oversight from Provident employees. *See* ECF No. 74-6 at 22:17-24:10. Moreover, Provident's own policies provide that a DBS like Ms. Backus "must determine if a claim for benefits is governed by ERISA in order to ensure that all requirements and timelines are met." ECF No. 74-4 at 1. Ms. Backus testified that she was unable to make that determination, *see* ECF No. 74-3 at 33:25-34:5, and an insurer's failure to adhere to its own policies can support a prima facie showing of willful and wanton conduct. *See Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 4371929, at *2 (D. Colo. Sep. 23, 2008) (finding that deposition testimony supporting the contention that insurers "knew their own standards and the purpose for those standards, and they did not follow them" was "sufficient to make out a prima facie case for willful and wanton behavior for the purposes of amending [plaintiff's] claims to seek exemplary damages").

Second, Dr. Sobanski has made a prima facie showing that Provident acted willfully and wantonly in failing to train its employees on the law governing insurance claims. Failing to train employees on the relevant law can support an exemplary damages claim. *See, e.g.*, *Schimek v. Owners Ins. Co.*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833, at *4-5 (D. Colo. Aug. 23, 2017) (granting motion to amend to add claim for exemplary damages where plaintiff's proffered

16

evidence of willful and wanton conduct included evidence that the claims representative handling the claim lacked experience and proper training); *State Farm Mut. Auto. Ins. Co. v. Fisher*, No. 08-cv-01687, 2009 WL 1011194, at *4 (D. Colo. Apr. 15, 2009) (evidence that insurance claim adjuster "lacked familiarity with the governing case law," as well as expert testimony that the insurance company "engaged in bad faith," demonstrated willful and wanton conduct so as to support an amendment to add an exemplary damages claim). Ms. Backus testified that she had not heard of the implied covenant of good faith and fair dealing, ECF No. 74-3 at 26:1-3, which, standing alone, is sufficient to establish a prima facie case of willful and wanton conduct. *See Sands v. Integon Nat'l Ins. Co.*, No. 18-cv-00714-PAB-NYW, 2020 WL 8188184, at *7 (D. Colo. Mar. 9, 2020) (finding burden for adding exemplary damages claim was satisfied where defendant failed to address plaintiff's factual averments, including "the lack of training provided to claims processor regarding Defendant's duty of good faith and fair dealing") (citation modified). Ms. Backus also admitted to lacking knowledge of Colorado laws and regulations applicable to insurance claims, *see* ECF No. 74-3 at 23:16-19, 24:2-5, which courts in this District have recognized is sufficient to satisfy Dr. Sobanksi's burden under § 13-21-102. *See, e.g.*, *Franklin D. Azar & Assocs.*, 2023 WL 7130144, at *3 (finding plaintiff made prima facie showing of willful and wanton conduct where claims handler "testified that he lacked knowledge of the law that applies to the claims they handled"); *Linder v. Horace Mann Ins.*, No. 19-cv-02071-CMA-KMT, 2020 WL 13490512, at *4 (D. Colo. Mar. 5, 2020) (evidence that adjuster misstated governing law satisfied insured's burden under § 13-21-102(1)(b)).

Third, Dr. Sobanski has met her exemplary damages burden with regard to Provident's claim handling process by proffering evidence showing, among other things, that Provident

employees gave her conflicting accounts of what information was necessary to adjust her claim and failed to adequately investigate it. Of particular relevance to the court's finding here is the Flood Report, which opines that "a reasonable insurer would not issue an adverse benefit determination without having made all reasonable efforts to adjust the claim." ECF No. 74-1 at 31. An expert report stating that an insurer's claims handling fell below industry standards, accompanied by relevant facts, supports a prima facie showing of willful and wanton conduct. *See Am. Econ. Ins. Co.*, 2007 WL 160951, at *3-4 (holding that expert testimony indicating defendant's conduct was "unreasonable and contrary to generally accepted insurance industry practices" supported a prima facie finding of willful and wanton conduct).

Provident points to its own expert report, which defends its claims handling process and challenges the assertion that misclassifying a policy as ERISA-controlled is harmful to the insured. ECF No. 88 at 4-5, 12, 16; *see also* ECF No. 88-1 at 84, 86, 89-90. At best, however, this "highlight[s] factual disputes between the parties with regard to Plaintiff's proposed claim for exemplary damages." *Schimek*, 2017 WL 3621833, at *5. And "resolution of factual disputes is inappropriate when considering whether to permit exemplary damages to be added to an action, and thus the court must determine whether the evidence put forth constitutes 'evidence that, unless rebutted, is sufficient to establish a fact.'" *Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-03569-NYW, 2021 WL 681444, at *12 (D. Colo. Feb. 22, 2021) (quoting *Stamp*, 172 P.3d at 449). Unrebutted, Dr. Sobanski's expert report supports her prima facie case for exemplary damages.

It bears repeating that, at this juncture, the undersigned is concerned "only with the preliminary question of whether [Dr. Sobanski] ha[s] made a prima facie case under § 13-21-

102(1.5)(a), not with summary judgment." *Am Econ. Ins. Co.*, 2007 WL 160951, at *4. "This is 'a low burden relative to the burden of proof at trial.'" *Stanisavljevic v. Standard Fire Ins. Co.*, No. 22-cv-03287-RM-SBP, 2024 WL 1330125, at *8 (D. Colo. Mar. 28, 2024) (quoting *Am. Ins. Co. v. Pine Terrace Homeowners Ass'n*, No. 20-cv-00654-DDD-MDB, 2022 WL 5240648, at *3 (D. Colo. Oct. 6, 2022), *report and recommendation adopted*, 2022 WL 17976699 (D. Colo. Nov. 23, 2022)). Viewing the facts articulated by Dr. Sobanski in accordance with this low bar, and in the light most favorable to her, Provident's arguments do not demonstrate that Dr. Sobanski's factual contentions lack evidentiary support. Dr. Sobanski therefore has met her burden to identify facts that establish a prima facie case of willful and wanton conduct.

## II.    Delay/Undue Prejudice

Provident argues that it will be unduly prejudiced if Dr. Sobanski is granted leave to amend her Complaint because she has unreasonably delayed in filing the Motion. ECF No. 88 at 17-18. Provident asserts that Dr. Sobanski "pleaded similar facts in her Complaint . . . that she now contends support her exemplary damages claim." *Id.* at 17. And so Dr. Sobanski "could have moved to amend as soon as the parties exchanged Rule 26 disclosures," Provident says; instead, she "delayed this motion for 11 months, which was 10 months" past the deadline for amending pleadings" and three months past the October 30, 2025 deadline for disclosure of affirmative experts. *Id.*; *see also* ECF No. 23 (setting March 5, 2025 deadline for amending pleadings); ECF No. 38 (setting October 30, 2025 deadline for affirmative expert disclosures). The prejudice to Provident attendant on this timeline is allegedly compounded by the fact that Dr. Sobanski has "refus[ed] to extend the discovery deadline other than to accommodate a couple of depositions." *See* ECF No. 88 at 18; *see also* Unopposed Motion to Amend Scheduling Order,

ECF No. 70.

Dr. Sobanski counters that it is "appropriate" and "consistent with state law" to wait until after discovery before seeking leave to add an exemplary damages claim. ECF No. 98 at 10. Dr. Sobanski characterizes her Motion as "based in large part o[n] information gathered in discovery," including details concerning (1) how Provident employees "deviate from the claims manual"; (2) alleged defects in the "investigative measures" undertaken by Provident employees and in their "knowledge and training during the time [Provident] handled Dr. Sobanski's claims"; and (3) how the actions of Provident employees amounted to willful and wanton conduct, as described in the Flood Report. *Id.* Dr. Sobanski also notes that Provident "fails to present any specific aspect of this litigation which would have changed if the Motion had been presented earlier." *Id.* She further observes that no trial date has been set and that Provident sought several extensions before filing its answer. *Id.* The undersigned concludes that granting Dr. Sobanski leave to amend her Complaint visits no demonstrable prejudice on Provident.

First, the court respectfully disagrees with Provident's characterization of Dr. Sobanski's purported delay in raising an exemplary damages claim. The prohibition on a litigant seeking exemplary damages in the initial pleading, *see* § 13-21-102(1.5)(a), emphasizes the principle that "willful and wanton conduct requires *more than* the same accumulation of bad acts that underlie the claim for common law bad faith." *Graham v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-00920-REB-NYW, 2020 WL 9720368, at *6 (D. Colo. June 30, 2020) (emphasis added), *report and recommendation adopted*, 2021 WL 2092813 (D. Colo. Mar. 31, 2021). A plaintiff is obliged to come forward with facts demonstrating that an insurer's representatives "must have realized that their respective or collective actions were done heedlessly and recklessly, without

regard to consequences, or of the rights of [the insured]." *Id.* Factual support plausibly evincing that level of intent does not necessarily materialize overnight; significant discovery may be required to ascertain whether such evidence exists. Here, evidence crucial to these findings was obtained in close proximity to the filing of the Motion on January 26, 2026. The Ward deposition—which figures heavily in the Flood Report, *see* ECF No. 74-1 *passim*—was taken on October 23, 2025. Gathering this information, from Dr. Sobanski's perspective, was necessary to reveal the alleged defects in training, experience, and knowledge that served as the impetus for Provident's decision to deny her claim under the Policy.

The court finds no reason to criticize Dr. Sobanski for waiting to see whether the information gleaned from a key deposition, followed by an expert's analysis of that information, provided sufficient  support for an exemplary damages claim. *See Shalz Constr. LLC v. Great Lakes Ins., SE*, No. 22-cv-03005-NYW-NRN, 2025 WL 952540, at *7 (D. Colo. Mar. 31, 2025) ("Plaintiffs cannot be faulted for seeking additional information and documents and reviewing the information prior to filing the Motion to Amend" to include a claim for exemplary damages.); *Louradour v. United Launch All., L.L.C.*, No. 20-cv-00608-RMR-NYW, 2021 WL 4947316, at *7-8 (D. Colo. Sept. 9, 2021) (finding no basis to deny an amendment based on undue delay where the motion was filed after the conclusion of fact depositions and where the last deposition provided information on which the plaintiff relied in seeking exemplary damages); *Gile v. Schmidt*, No. 16-cv-02498-PAB-NYW, 2018 WL 3056074, at *5 (D. Colo. Jan. 26, 2018) ("[T]his court finds it imprudent to penalize Plaintiffs for first satisfying themselves as to the sufficiency of the evidence regarding the higher burden of proof [for a claim for exemplary damages], particularly when the Motion to Amend was filed but two days after the

close of discovery[.]"), *report and recommendation adopted*, 2018 WL 6790310 (D. Colo. May

3, 2018).

Second, and of equal importance to the court's analysis, Provident has failed to specify

how the amendment amounts to prejudice of legal magnitude. The generic objection that

Provident will suffer undue prejudice is inadequate to allow the court to ascertain how it will be

"unfairly affected in terms of preparing its defense to claims asserted in the amendment." *Stanton*

*v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2010829, at *5 (D. Colo. May

14, 2013) (citation modified). Nor can the court discern the existence of such prejudice from a

careful review of the record. The parties have engaged in fulsome discovery. Provident is

apprised of the bases for Dr. Sobanski's claim for exemplary damages and has had an

opportunity to develop the counterarguments it has articulated in response to the Motion.

*    *    *

To summarize the foregoing analysis, the court finds that Dr. Sobanski has proffered

evidence, construed in her favor, which demonstrates that the circumstances surrounding the

denial of her claim transcended simple negligence and amounted to willful and wanton conduct

on the part of Provident. Therefore her Motion to Amend will be granted. In so concluding, the

court answers only the "preliminary question" of whether Dr. Sobanski has made a prima facie

case, *Am. Econ. Ins. Co.*, 2007 WL 1600951, at *4, and does not pass on the merits of her

demand for exemplary damages—or Provident's defenses. The court recognizes that Provident

emphatically disputes that its actions warrant placement "in the same category as conduct that

society at large could or would consider worthy of exemplary damages." *See* ECF No. 88 at 12-

13 (citing cases); *see also id.* at 12 (arguing that "[i]t is reasonable for an insurer to challenge

22

claims that are fairly debatable") (quoting *Pham v. State Farm Mut. Auto Ins. Co.*, 70 P.3d 567,

572 (Colo. App. 2003)). To be sure, Provident's arguments may carry the day at summary

judgment or at trial, but that possibility provides no legal justification for rejecting Dr.

Sobanski's proposed amendment now.

## CONCLUSION

Accordingly, **IT IS RESPECTFULLY ORDERED** as follows:

(1)     Plaintiff Dr. Candice A. Sobanski's Motion to Amend Complaint to Add Claim for

Exemplary Damages, ECF No. 74, is **GRANTED**;

(2)     Plaintiff is **ORDERED** to file a clean version of the proposed Amended

Complaint, ECF No. 74-12, as a separate docket entry on or before July 13, 2026; and

(3)     Defendant Provident Life and Accident Insurance Company is **ORDERED** to file

an answer to the Amended Complaint within fourteen days of service of the Amended Complaint

and Jury Demand, **revised only to address Plaintiff's newly-asserted requests for relief in the

form of exemplary damages**.[5]

---

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after
service of a Magistrate Judge's order or recommendation, any party may serve and file written
objections with the Clerk of the United States District Court for the District of Colorado.
28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection
will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See
Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver
rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119,
1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require
review, including when a "pro se litigant has not been informed of the time period for objecting
and the consequences of failing to object").

23

DATED: July 7, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge